IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

WILLIAM F. TUTTLE                                        PLAINTIFF

v.                                        CAUSE NO. 1:10CV202-LG-RHW

CIGNA GROUP INSURANCE,
CIGNA CORPORATION, and LIFE
INSURANCE COMPANY OF NORTH
AMERICA                                                 DEFENDANTS

### AMENDED MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS ORDER supplants and replaces the Court's Memorandum Opinion and Order [68] Granting the Motion for Summary Judgment [55] filed by Defendants CIGNA Group Insurance ("CIGNA Group"), CIGNA Corporation ("CIGNA Corp."), and Life Insurance Company of North America ("LINA"). In accordance with the Order [70] granting in part the Motion for Reconsideration filed by Plaintiff William F. Tuttle ("Tuttle"), the Court amends its Memorandum Opinion and Order as follows.

### FACTUAL AND PROCEDURAL BACKGROUND

Tuttle filed this action in the Circuit Court of Jackson County, Mississippi. Defendants CIGNA Group, CIGNA Corp., and LINA removed the lawsuit to this Court on the basis of federal question jurisdiction. The Complaint alleges that Tuttle was insured under an ERISA plan that provided long term disability insurance "issued by Life Insurance Company of North America, CIGNA Group Insurance and/or CIGNA Corporation." (Compl. at 1 (¶I)). Tuttle claims that Defendants improperly processed his claim and improperly denied him benefits.

Tuttle was employed from 1991 through 2000 at Lockheed Martin Corporation in Mississippi as a senior systems engineer.  He was responsible for installing the computer systems aboard the military ships constructed by Lockheed Martin.  He participated in its health plan, which included disability insurance. LINA, a subsidiary of CIGNA, issued the insurance and administered the plan. (*See* Defs.' Ex. A, ECF No. 56-1; Defs.' Ex. B, ECF No. 56-2; A.R. Part 1, 54-77, ECF No. 63-1).

Tuttle first became disabled in September of 2000 when he developed what would later be diagnosed as osteomyelitis in his left hip.  For this he was granted short term disability benefits, because he was unable to perform his occupation, which included climbing up and down ladders and stairs aboard ships.  He subsequently suffered from concurrent health problems including cervical and lumbar radiculopathy, two heart attacks, and avascular necrosis in his left knee. Tuttle also underwent a total hip arthroplasty.

LINA granted Tuttle long-term disability benefits in March 2001.  Under the policy, long-term disability benefits based on an inability to perform one's *own* occupation were available for a maximum of 180 days.  According to the policy, in order to receive long-term disability benefits after the 180 day period, Tuttle would have to be unable to perform *any* occupation.  (*See* Defs.' Ex. A 39, ECF No. 56-1). LINA approved continued long-term disability benefits after the 180-day period expired, but, as discussed below, it eventually terminated those benefits in 2004.

At LINA's direction, Tuttle underwent a Functional Capacity Exam (FCE) in

January 2004.  (*See* A.R. Part 3, 73, ECF No. 63-3; A.R. Part 4, 1-10, ECF No. 63-4).

The FCE results showed that while Tuttle should not return to his previous

occupation, he had "demonstrated the ability to perform work in the sedentary

physical demand category."  (Defs.' Ex. A 45, ECF No. 56-1; A.R. Part 4, 1, ECF No.

63-4; *see also* A.R. Part 4, 5, ECF No. 63-4).  The FCE summary concluded that

Tuttle was "capable of performing desk bound functions with the ability of change of

position," but in order for that to occur, Tuttle would "have to be cleared from a

cardiac status."  (Defs.' Ex. A 46, ECF No. 56-1; A.R. Part 4, 3, ECF No. 63-4).

LINA forwarded a copy of the FCE report to Dr. Manoj Shah, Tuttle's

treating cardiologist, seeking his opinion and specifically asked whether he

disagreed with the report.  (A.R. Part 4, 12-13, ECF No. 63-4).  Dr. Shah and Jim

Savage, the Cardiac Rehab Director, responded and informed LINA that "Mr.

Tuttle's exercise program is in the maintenance phase . . . [it] constitutes a total

workout time of 70-80 minutes.  His overall functional capacity is between 7-8

METS."  (A.R. Part 3, 65, ECF No. 63-3).  LINA considered Dr. Shah's response to

the FCE to be a confirmation that Tuttle was capable of sedentary work.  (*See* A.R.

Part 1, 40-41, ECF No. 63-1).

A rehabilitation specialist completed a Transferable Skills Analysis (TSA)

based on the results of Tuttle's FCE, and identified five "suitable sedentary

occupations" in the Ocean Springs, Mississippi labor market that met Tuttle's

"skills, education, work history, and wage replacement requirements."  (A.R. Part 4,

28, ECF No. 63-4).  These occupations would allow Tuttle to alternate his positions

3

between "sitting, standing, and walking at his discretion throughout the day." (A.R. Part 4, 28, ECF No. 63-4).

LINA terminated Tuttle's benefits effective June 2004 based on its finding that, while he was still disabled in terms of his own occupation, he was no longer disabled in terms of all other occupations. (*See* Defs.' Ex. A 28-32, ECF No. 56-1; A.R. Part 3, 67-71, ECF No. 63-3). LINA informed Tuttle of the denial of his benefits in a letter dated July 7, 2004. The letter indicated that LINA had reviewed Tuttle's medical records from Dr. Shah, his treating cardiologist, and that the results of the FCE performed in January 2004 indicated that Tuttle was capable of sedentary work and a number of other activities. (Defs.' Ex. A 29, ECF No. 56-1). The letter further stated that LINA had submitted the results of the FCE to Dr. Shah for his review, and that he had "not submitted any medical documentation to contradict [its] findings." (*Id.*). LINA also noted that a TSA had been compiled based on the results of Tuttle's FCE, and the TSA identified five occupations Tuttle was capable of performing in his local labor market. (*Id.*). It also informed Tuttle of his appeal rights.

Tuttle appealed the decision to discontinue his benefits, but LINA affirmed the denial on February 22, 2005. (Defs.' Ex. A 80, ECF No. 56-1). LINA's February 2005 letter to Tuttle explained the reasons for the denial of his appeal, and indicated that his "entire claim file was thoroughly reviewed, along with the additional information received for the appeal of [his] claim." (*Id.*). LINA also informed Tuttle that all of his medical evidence was referred to a physician board

4

certified in Internal Medicine and Occupational Medicine for an independent review. (*Id*.). According to the independent physician's review, Tuttle had "more than enough cardiac reserves in order to be able to perform a sedentary occupation," and that the "available test on file indicate[s] [his] functional capacity to be 7-8 METS." (*Id*. at 80-81). LINA further noted that Tuttle had been released to return to light duty work in 2001, an MRI in 2003 "showed no recurrent HNP," and that, with respect to his "diagnosis of necrosis of the left hip [he was] released to full weight bearing without the use of a cane or walker in October 2002." (*Id*. at 81).

LINA reiterated that in order to be entitled to long-term disability benefits, he must be considered totally disabled and unable to perform any occupation. LINA noted that the TSA performed in 2004 had indicated five occupations Tuttle was capable of performing. Therefore, Tuttle did not meet the definition of total disability under the policy, and his benefits were denied. (Defs.' Ex. A 81, ECF No. 56-1.)

Tuttle filed a second appeal on August 17, 2005. He was given more time to provide any further proof of disability. He did so and indicated he would be sending updated records from his cardiologist. Almost two years later, on April 5, 2007, Defendants sent a letter that they never received the cardiologist records. (A.R. Part 1, 52, ECF No. 63-1). Tuttle filed this lawsuit three years later, on April 5, 2010.

DISCUSSION

*The Statute of Limitations*

The Defendants argue the statute of limitations has run.  Tuttle responds that the limitations period was equitably tolled until April 5, 2007, based on Defendants' misrepresentations.  Before reaching the merits of the claims, the Court examines whether Tuttle's claims were timely filed.

Defendants bear the burden of proof on this affirmative defense; therefore they "must establish 'beyond all peradventure all of the essential elements of the . . . defense'" in order to obtain summary judgment.  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  An ERISA cause of action for wrongful denial of benefits "accrues when a request for benefits is denied."  *Hogan v. Kraft Foods, Inc.*, 969 F.2d 142, 145 (5th Cir. 1992).  The discovery rule applies.  *Lawrence v. Jackson Mack Sales*, 837 F. Supp. 771, 781 (S.D. Miss. 1992).  The parties may contract for a different limitations period, so long as it is reasonable.  *Harris Methodist Fort Worth v. Sales Support Servs., Inc., Emp. Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 20005).  Some courts hold that a policy that sets an accrual date before the denial of a claim is unreasonable *per se.*  *White v. Sun Life Assurance Co.*, 488 F.3d 240, 242 (4th Cir. 2007), *cert. denied* 128 S. Ct. 619 (2007).  *See also*, *Amos v. Hartford Life & Accident Ins. Co.*, No. CV-08-BE-2165-M, 2009 WL 1804989 (N.D. Ala. June 24, 2009); *Island View Residential Treatment Ctr., Inc. v. Bluecross Blueshield of Mass., Inc.*, No. 07-10581-DPW, 2007 WL 4589335, *13-14 (D. Mass.

6

Dec. 28, 2007). The Eighth Circuit has applied the accrual date under federal common law even though the policy provided a different date. *Wilkins v. Hartford Life & Accident Ins. Co.*, 299 F.3d 945, 948-49 (8th Cir. 2002). Other courts examine the reasonableness of a contractual accrual date on a case by case basis. *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 455 (6th Cir. 2009); *Burke v. PricewaterhouseCoopers, LLP, Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009); *Abena v. Metro. Life Ins. Co.*, 544 F.3d 880, 884 (7th Cir. 2008). The Fifth Circuit has not yet determined which of these approaches (if any) is correct. *Baptist Mem'l Hosp.–Desoto, Inc. v. Crain Auto., Inc.*, 392 F. App'x 289, 295 n.1 (5th Cir. Aug. 19, 2010). As explained below however, the Court need not make this decision in this case. The policy provides, "No action at law or in equity may be brought to recover benefits under the Policy . . . more than 3 years after the time written proof of loss must be furnished." (A.R. Part 1, 73, ECF No. 63-1). Proof of loss is due:

> within 90 days after the date of loss for which a claim is made. If . . . not given in that time, . . . as soon as was reasonably possible. In any case, written proof of loss must be given not more than a year after the time it is otherwise required, except if proof is not given solely due to the lack of legal capacity.

> Within 30 days of a request, written proof of continued Disability and of regular attendance of a Physician must be given to the Insurance Company.

(*Id.* at 72). Finally:

> If any time limit stated in the Policy for . . . bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time

limit provided in the Policy is extended to agree with the minimum
permitted by the law of that state.

(*Id.* at 73).   In other words, pursuant to the policy, Tuttle has the greater of (1)

three years after proof of loss must be furnished or (3) the minimum permitted by

Mississippi law.

Defendants argue proof of loss was required to be furnished on September 22,

2004, ninety days after LINA effectively discontinued benefits.   Therefore,

Defendants maintain Tuttle had until September 22, 2007, to file this action.

Defendants further assert that this is the same amount of time he had to file under

the Mississippi catch-all limitations period.   However, even though benefits were

discontinued effective June 24, 2004, the notice of discontinuance was not mailed to

him until July 7.   Moreover, Defendants admit that the catch-all limitations period

does not begin to run until "the cause of action accrue[s]."   MISS. CODE ANN. § 15-1-

49.   Defendants do not explain why the cause of action for a denial of benefits

accrues ninety days after the initial denial, when Defendants provided two level of

appeals and Tuttle was required to exhaust his administrative remedies.   The

initial denial letter of July 7, 2004, informed Tuttle of the discontinuance of long

term benefits and his right to appeal. He timely submitted an administrative

appeal on December 30.   On February 22, 2005, this appeal was denied.   Again, he

was informed of his right to appeal:

> You must request a review of this decision by writing to the Life
> Insurance Company of North America representative signing this
> letter at the address notice on the letterhead.   The written request for
> review must be *sent within 180 days of the receipt of this letter*.   In

addition to any written comments, your request for review must include new documentation *you wish us to consider*.

This documentation includes, but is not limited to

- Medical records and test results from your treating physicians dating from 6/25/04 forward
- Specific limitations and restrictions to your abilities that may have been placed by any of your physicians since 6/25/04.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter. A final decision will be made no later than 90 days.

Please note that you have a right to bring legal action regarding your claim under the ERISA section 502(a).

(A.R. Part 3, 169-70, ECF No. 63-3) (emphasis added).

Tuttle timely requested a second appeal on August 17, 2005, twelve days before Hurricane Katrina.  Two days later, LINA responded that in order to appeal "new additional medical documentation . . . must be presented. . . . Once this information is received, we will be able to accept your request for a voluntary appeal."  (A.R. Part 6, 460, ECF No. 63-6).  This is contrary to the first two letters regarding appeal which stated only that he must submit whatever new documentation that he wanted to be considered.

Nevertheless, Tuttle submitted new information on October 6, 2006.  His New Orleans counsel explained that his office was flooded during Katrina and reestablishing his home and office had been difficult. He attached additional

medical evidence and noted, "We intend to submit additional evidence. . . . Accordingly, we ask that his record be held open for those submissions prior to your rendering a decision on his appeal." (A.R. Part 2, 155, ECF No. 63-2). On October 31, Senior Appeal Specialist Karol Johnson referred to the February, 2005 letter and notified his counsel that without new medical documentation:

> we cannot consider another review of your client's claim at this time. As stated in your letter you intend to submit additional evidence in support of Mr. Tuttle's claim. Please ensure that this information is received in this office within 60 days of the date of this letter, along with your letter advising us that all information has been submitted. Mr. Tuttle's claim will then be assigned to an Appeal Claim Manager to proceed with the Voluntary Appeal Review.

(*Id.* at 153). Thus, Tuttle was granted an extension. The new medical information and advisement that it was complete had to be received by December 30, for the second appeal.  This date fell on a Saturday, so viewed in the light most favorable to him, he had until Tuesday, January 2, 2007, the next business day.  On Friday, December 29, 2006, he mailed, *via* overnight Federal Express, additional medical evidence. He advised that additional records from his heart doctor had been ordered and would be mailed soon. Thus all of Tuttle's new medical evidence, minus the cardiologist's materials, was timely received.

Nevertheless, Johnson waited until April 5, 2007, to respond to Tuttle's "letter dated December 29." (A.R. Part 1, 52, ECF No. 63-1).

> As stated in our letter of October 31, 2006 we extended the time to submit additional evidence. . . . Without the above suggested documentation covering the stated period, we cannot consider another review of your client's claim at this time. As stated in your letter, you did intend to submit additional medical records from Manoj Shah,

MD., but as of the date of this letter, the information has not been received in our office.

Please be advised that we have not received any additional medical information to change our previous decision to deny your client's claim for benefits as of June 25, 2004. Therefore, your client has exhausted any rights to further appeals to this office.

*Id.* The letter is ambiguous as to whether the appeal was considered. The Administrative Record indicates Defendants never considered the merits of the second appeal.

In any event, Tuttle had been informed that he had until January 2, 2007, to have all of his evidence at the appeals office. He was told that once that information was received, the decision would be issued within forty-five days, unless prior written notices of extension of time were issued. It is true that he requested more time on December 29, but when this request was not responded to by February 21[1], 2007, or forty-five days after the deadline for the second appeal, it was unreasonable to wait any longer for a response to his request for time. He had notice that a denial should have been forthcoming on this date, if the appeal was being considered. Nevertheless, he waited until September 29, 2008[2] to submit Dr. Shah's records and inquire as to the status of his appeal. Even if he should have

---

[1]  The forty-fifth day was actually Friday, February 16. If the decision would have been mailed on this date, Tuttle's counsel would not have received it until Wednesday, February 21, as Monday the 19th was President's Day.

[2]  Tuttle's counsel maintained he did not receive the April 5, 2007, letter, even though it was mailed to his office. He inquired after the second appeal in 2008, and Life Insurance did not respond until May 15, 2009.

waited until ninety days later, this date fell on April 2, 2007.  Taking this later

date, his lawsuit should have been filed no later than April 2, 2010.  This action,

filed on April 5, was therefore untimely.

*Equitable Tolling*

The Court must now consider Tuttle's equitable tolling arguments. In order

to prove equitable estoppel, he must prove (1) a material misrepresentation, (2)

reasonable and detrimental reliance, and (3) extraordinary circumstances.  *Mello v.*

*Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005).

Tuttle first argues he is entitled to equitable tolling based on Johnson's

October 31, 2006 letter.  He argues that this letter misrepresented to him that "his

second appeal, his 'voluntary appeal,' was being held open pending receipt of his

additional medical records and pending receipt of his notification that he had

supplied all records he had intended to submit."  (Pl.'s Resp. at 12).  As has been

previously shown, this is incorrect.  Johnson told him that he had sixty days to both

submit new information and inform Defendants that he had no other information to

submit.  In other words, he could have submitted the new information sooner and

would then need to inform Defendants that he would not be submitting any more.

Tuttle next argues that he likewise relied on Johnson's April 5, 2007,

representation that "the information was received and that Plaintiff's internal

appeal rights were not exhausted until April 5, 2007."  *Id.*  As stated above,

Johnson's letter is ambiguous as to whether the second appeal was considered.  In

the light most favorable to Tuttle, the letter is evidence of a misrepresentation.  He

12

argues that Hurricane Katrina presented an extraordinary circumstance, because it devastated the region in which he, his counsel, and his physicians lived and worked. Tuttle gives no evidence that these circumstances affected him, his counsel, or his physicians past October of 2006. There is no evidence that the effects of the hurricane disadvantaged his ability to inquire after his appeal between January 2 and April 2, 2007, nor to evaluate the Administrative Record after the receipt of the April 5, 2007 letter. It is unclear how the hurricane presented an extraordinary circumstance in 2007. Accordingly, Tuttle has failed to show that he is entitled to equitable tolling. This case was untimely filed.

_Evaluation of ERISA Claims_

Even if Tuttle's claims had been filed timely, he is unable to show that his ERISA claims are meritorious. ERISA provides the district courts with the authority to review an administrator's denial of plan benefits. 29 U.S.C. § 1132(a)(1)(B). In this case, the LINA claims administrator had discretionary authority to evaluate and decide benefits claims.[3] Therefore, the standard of review the Court applies to the decision to terminate Tuttle's benefits is deferential. _See Firestone Tire & Rubber Co. v. Bruch_, 489 U.S. 101, 111, 115 (1989). The Court

---

[3] The policy provided that a claimant seeking disability benefits was required to submit "satisfactory proof" to LINA before the benefits could be paid. (Defs' Ex. A 13, ECF No. 56-1). Tuttle does not dispute that LINA had discretionary authority to decide the claim. _See Magee v. Life Ins. Co. of N. Amer._, 261 F. Supp.2d 738, 748-49 (S.D. Tex. 2003) (holding that 'the "satisfactory proof" language . . . grants LINA discretion to determine eligibility for benefits")(citing _Jarrell v. Reliance Std. Life Ins. Co._, 3:96-CV-1542-G, 1996 WL 735561 at *5 (N.D. Tex. Dec.13, 1996); _Yeager v. Reliance Std. Life Ins. Co._, 88 F.3d 376, 381 (6th Cir.1996)).

reviews such decisions for an abuse of discretion, and overturns such determinations only if they are arbitrary and capricious.  *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010).

The Fifth Circuit has held that a "decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'"  *Meditrust Fin. Servs. Corp. v. The Sterling Chemicals, Inc.* 168 F.3d 211, 215 (5th Cir. 1999) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828-29 (5th Cir. 1996)).  Additionally, "a plan administrator abuses its discretion where the decision is not 'based on evidence, even if disputable, that clearly supports the basis for its denial.'"  *Holland v. Int'l Paper Co. Retirement Plan,* 576 F.3d 240, 246 (5th Cir. 2009) (citing *Lain v. UNUM Life Ins. Co.*, 279 F.3d 337, 342 (5th Cir. 2002)).  The Court's review is based on the record before the administrator.  *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 395 (5th Cir. 1998).  Additionally, the review "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness--even if on the low end."  *Holland*, 576 F.3d at 247 (citing *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)). *See also Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004) ("We are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance.  If the plan fiduciary's decision

14

is supported by substantial evidence and is not arbitrary and capricious, it must

prevail."). Finally, where, as here, the plan administrator is an insurance company,

the Court must weigh the fact that the administrator is operating under a conflict of

interest as one factor in determining whether there is an abuse of discretion.

*Firestone*, 489 U.S. 101, 115; *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008).

*The Denial of Benefits*

In support of their motion for summary judgment, Defendants argue that the

denial of Tuttle's long-term disability benefits was not arbitrary and capricious.

Defendants submit that the results of the FCE performed on Tuttle indicated that

he could perform sedentary work; the TSA revealed several occupations Tuttle could

perform; and an independent physician peer review confirmed that Tuttle could

perform sedentary work. Defendants also point out that there are several

references in the record to a "psychological component" of Tuttle's complaints.

Tuttle argues that the evidence relied upon by LINA in denying his claim is

not substantial. He submits that the "only evidence" Defendants relied on was his

treating cardiologist's statement that he could perform certain levels of activity

during the maintenance phase of his rehabilitation, and another treating

physician's comments that Tuttle magnified his pain symptoms. Tuttle argues that

his cardiologist's statement was "not a statement that he could work any particular

job." (Pl.'s Resp. 7, ECF No. 62). He argues that the other physician's comments

about Tuttle magnifying his pain symptoms are "unquestionably biased and

subjective." (*Id.*) Tuttle maintains that he provided medical evidence of conditions

15

that "cumulatively have the effect of rendering him totally disabled." (*Id.* at 8). Tuttle also argues that the independent peer review ignores medical evidence, and that LINA unreasonably did not consider the Social Security Administration's determination that Tuttle was disabled.

The administrative record does make it clear that Tuttle has an extensive medical history and has suffered from several conditions that cause him pain and an inability to perform certain activities, including those required for his previous occupation. The record also contains statements from two of Tuttle's treating physicians indicating that they did not believe Tuttle was able to return to work. Specifically, Tuttle enclosed with his appeal to LINA a letter from Eric Graham, M.D., an orthopedist dated November 2004. Dr. Graham wrote that in his opinion, Tuttle was not "employable in any fashion." (Defs.' Ex. A 54, ECF No. 56-1; A.R. Part 3, 45, ECF No. 63-3). Tuttle also included with his appeal a letter from Dr. Richard Smith, M.D., a family physician, dated January 2005, in which Dr. Smith wrote that he found it "difficult to believe that this man is able to function in any form of employment[.]"[4] (Defs.' Ex. A 105, ECF No. 56-1; A.R. Part 3, 21, ECF No. 63-3).[5] LINA reviewed these letters from Tuttle's physicians, but apparently did not

---

[4] Dr. Richard Smith also noted in a medical assessment executed at request of Tuttle's counsel that he believed Tuttle was permanently disabled. (A.R. Part 2, 79, ECF No. 63-2).

[5] Tuttle also enclosed a note from Dr. Chen, a pain medicine specialist, dated August 2004, stating that he would defer to Dr. Graham regarding Tuttle's work status, but that he found it "difficult to believe" Tuttle could "return to work." (Defs.' Ex. A 103, ECF No. 56-1; A.R. Part 3, 46, ECF No. 63-3). However, Dr. Chen had not

find them determinative of his disability status.  (*See* A.R. Part 1, 33, ECF No. 63-1; A.R. Part 2, 1, ECF No. 63-2).

Moreover, there is substantial evidence in the record to support the decision to deny Tuttle's claim for long-term disability benefits.  As noted above, the Court may review a discretionary determination by a claims administrator to determine if there was an abuse of discretion, and the Court may not substitute its judgment for that of the administrator.  *See Schadler*, 147 F.3d at 395.  The Court concludes that there is a "rational connection" between the facts and LINA's decision.  *Meditrust*, 168 F.3d at 215.  Under the deferential standard of review applied to ERISA claims such as this one, the Court finds that LINA did not abuse its discretion in denying Tuttle's claim.

Tuttle was initially granted long-term disability benefits in 2001.   In January 2004, he underwent an FCE to evaluate whether those benefits should be continued.  The FCE concluded that Tuttle was able to perform work in the sedentary physical demand category.  (A.R. Part 4, 1, 5, ECF No. 63-4).  The FCE summary also noted that "sitting and standing tolerances were observed to be greater outside the evaluation process," and that Tuttle "demonstrated standing tolerances twice that of the testing value immediately following the testing regime." (A.R. Part 4, 1, ECF No. 63-4).  Tuttle's "problem list" included "client motivation."

---

reviewed the FCE or the TSA; he notes only that Tuttle had "stated that he had [an] FCE done recently that says he could go back to work in some capacity."  (*Id*.).

17

(*Id.* at 3).[6]  The FCE stated that Tuttle would need to be cleared "from a cardiac status" to work, and the record indicates that LINA forwarded the FCE to Tuttle's treating cardiologist and asked him specifically whether he disagreed with the FCE. Tuttle's cardiologist responded that "Mr. Tuttle's exercise program is in the maintenance phase" and "[h]is overall functional capacity is between 7-8 METS." (A.R. Part 3, 65, ECF No. 63-3).  Tuttle's cardiologist did not note any disagreement with the results of the FCE.

Additionally, the record demonstrates that, Dr. Joe Chen, M.D., a pain medicine specialist, assessed that in June 2004, Tuttle could sit six hours in an eight hour day, but he could not stand or walk two hours in an eight hour day. (A.R. Part 2, 80, ECF No. 63-2.)  Chen also noted that a "final work determination will be left to orthopedic surgeon."  (*Id.* at 81).  In December 2004, Tuttle's treating orthopedist noted that Tuttle was "requesting some kind of letter for his knee and requesting disability."  (*Id.* at 60).  The orthopedist concluded that Tuttle was "not disabled from an orthopedic standpoint," and that, based on his knee and hip problems alone, Tuttle "should be able to return back to medium to medium light duties."  (*Id.*).  However, the orthopedist noted that given Tuttle's "heart conditions and other abnormalities," the FCE "should be evaluated by those physicians and recommendations made."  (*Id.*).  As noted above, Dr. Shah, Tuttle's treating cardiologist, did not cite any disagreement with the results of the FCE when LINA

---

[6] The FCE report also noted that Tuttle had not given his maximum effort, but had not magnified his symptoms.  (A.R. Part 4, 6, ECF No. 63-4).

asked for his opinion.

LINA obtained an independent peer review of Tuttle's records by Dan Gerstenblitt, M.D., who is board certified in Internal Medicine and Occupational Medicine.  Dr. Gerstenblitt reviewed Tuttle's medical records as well as the FCE and the TSA.  (*See* A.R. Part 6, 59-62, ECF No. 63-6).   He concluded that "there was [a] lack of significant findings" in Tuttle's medical records to support a finding that he could not work in a sedentary position.  (*Id.* at 62).  Dr. Gerstenblitt discussed the FCE conducted in December 2004, which found Tuttle could perform 7-8 METS for a total of 70-80 minutes, and noted that this "exceeds the requirements of a sedentary job." (*Id.* at 63).  He also noted that Tuttle's "cardiac condition appeared stable," and he was in a "maintenance phase" of rehabilitation at that point. (*Id.*).  Dr. Gerstenblitt concluded that Tuttle's "claim was being driven simply by [his] self-reports," and that the "only thing driving [Tuttle's] inability to perform sedentary work is [his] self-limiting behaviors." (*Id.*).

The record demonstrates that LINA considered Dr. Gerstenblitt's opinions to be significant in making the determination to deny Tuttle's claim.  Again, while Dr. Gerstenblitt's opinion differs from at least one of Tuttle's treating physicians, ERISA does not require plan administrators or the Court to accord special deference to opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003) ("Nothing in [ERISA] however, suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the

Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion.")  The Court may not require LINA to place more weight on the opinions of Drs. Graham and  Richard Smith than on the independent peer review.  *See Braddock v. Baker Hughes Long Term Disability Plan*, 461 F. Supp. 2d 490, 502 (S.D. Miss. 2006) (noting decisions in which "courts have upheld administrators' decisions where the administrator chose to rely upon medical opinions from doctors other than treating physicians, even from doctors selected by the administrator to review the claim and even where those doctors did not personally examine the claimant.") (citations omitted).

The Court also notes that Tuttle's treating neurologist, Terry Smith, M.D., stated in September 2000 that Tuttle's "pain complaints and actions today seem grossly out of proportion to the degree of positive findings." (Defs.' Ex. A 33-34, ECF No. 56-1).  In February 2001, Dr. Smith wrote to Tuttle's family physician that there was "great psychological overlay" to Tuttle's lack of progress, which was "completely out of proportion to the norm." (*Id.* at 99-100; A.R. Part 9, 59, ECF No. 63-9).  Dr. Smith also noted that Tuttle said he "wants to use up all of this disability and he is quite adamant that he is not able to return to work," but that he had told Tuttle that he "should be able to return to light duty."  (A.R. Part 9, 59, ECF No. 63-9).  Tuttle argues in his response to Defendants' Motion for Summary Judgment that Dr. Smith's comments are "biased," but he provides no explanation as to why Dr. Smith would be biased against Tuttle or evidence of such bias.

Tuttle also makes an overarching argument that LINA was operating under

a conflict of interest in evaluating his claim.  The Court recognizes the inherent conflict present in LINA's evaluation of a claim it would also pay.  However, given that the record includes the objective results of the FCE, a TSA indicating several occupations Tuttle could perform, as well as additional medical evidence regarding Tuttle's ability to perform some functions, the Court cannot conclude that the conflict is a factor that outweighs the evidence supporting LINA's decision.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115 (1989).

Finally, Tuttle also argues that LINA must have abused its discretion because its correspondence regarding the denial of his benefits does not address the determination by the Social Security Administration (SSA) that he was disabled. (Pl.'s Resp. 8, ECF No. 62).  The record indicates that the Social Security Administration did determine that Tuttle was disabled and entitled to SSA benefits.  (A.R. Part 7, 67, ECF No. 63-7).  However, Tuttle concedes that SSA determinations of disability do not automatically entitle an individual to benefits under a private insurance plan governed by ERISA. (See Pl.'s Mem. 12, ECF No. 58).  He also makes no argument that the standards for a determination of disability by the SSA are the same or similar to the requirements for long-term disability benefits under the ERISA-governed policy in this action.  Given the evidence in the record before LINA, the Court is not convinced that the absence of a reference to the SSA determination shows that LINA abused its discretion with respect to Tuttle's claim.

Under the language of the policy, in order to collect long-term disability

21

benefits, Tuttle must be disabled to the extent he cannot perform *any* occupation. The TSA identified five sedentary occupations that met Tuttle's requirements. While Tuttle has submitted evidence demonstrating that he suffers from a number of medical conditions, and the Court recognizes that Mr. Tuttle does have numerous limitations, there was more for LINA to consider, including objective test results. Given the evidence discussed above and the deferential standard under which the Court must review Defendants' determination, the Court does not find that the decision to deny Tuttle's claim for long-term disability benefits was arbitrary or capricious.  The Court need not reach the issue of whether CIGNA Corp. and CIGNA Group are properly named defendants.

**IT IS THEREFORE  ORDERED AND ADJUDGED** that Defendants CIGNA Group Insurance, CIGNA Corporation, and Life Insurance Company of America's [55] Motion for Summary Judgment should be and is hereby **GRANTED**. A separate judgment will be entered herewith in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 4th day of April, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE